IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| Kevin Cox, | ) | C/A No. 3:09-2811-JFA |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | ORDER |
| | ) | |
| Handcrafted Homes, LLC, and HH Hunt Corporation, | ) ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

This is an employment case. The plaintiff contends that he had a one-year contract for employment that was breached when the defendants fired him. In addition to alleging breach of contract, the plaintiff alleges claims for promissory estoppel and violation of the South Carolina Payment of Wages Act.[1] The defendants filed a motion for summary judgment [Doc. 14] contending, among other things, that the plaintiff was an at-will employee who did not have a contract for a definite term. The court heard oral argument on May 10, 2010, and took the matter under advisement. After considering the materials submitted and the arguments of counsel, the court grants the motion.

**I.    Factual and Procedural Background**

In July of 2008, HandCrafted Homes, a North Carolina corporation, hired Kevin Cox to sell modular homes in South Carolina. Cox recalls the following conversation with Alan Trull, the sales manager for HandCrafted:

---

[1]The complaint also includes a claim for breach of contract accompanied by a fraudulent act, but the plaintiff concedes that this cause of action is no longer viable.

> I recall a phone call and I being told by Alan Trull that he had talked to Bill and they had reached an agreement that they would agree to pay me $75,000 for 12 months plus the $500 car allowance.
>
> . . .
>
> I recall Alan telling me, I guess it was a phone call, that he would agree to the $75,000, the $500 car allowance for 12 months. And that was before, obviously before I resigned from Nationwide.

(Cox. Dep. 25:17-20; 27:9-12.)

In addition to this conversation, Cox received an email from Alan Trull, stating, in part:

> First of all, I would like to welcome you to HCH and say that I look forward to working with you for many years and truly think that you and HCH have made a great decision to work together in the growing process of South Carolina and making it a top producing territory for us.
>
> Please read over the following terms of employment. I believe you'll find this to be as we discussed.
>
> For the first twelve months of employment HandCrafted Homes will compensate you at an annual rate of $75,000 a year. This will be a base salary of $30,000 and $45,000 ($865.39/week) draw against commission. Monthly we will reconcile the commissions against the draw. In the event that your commissions surpass the draw you will be paid the additional amount at the end of the twelve months. Commissions are paid at 1.5% from 0-2 million and 2% on anything over 2 million.
>
> Monthly we will pay you a car allowance of $550.00. We will also reimburse your fuel costs while traveling on business for HCH, per receipts.
>
> HCH will reimburse your normal expenses incurred during road trips. Meals will be paid based on actual costs, (Reasonable). Receipts to accompany an expense report. Hotel bills not to exceed $80.00 per night.
>
> You'll be paid commission in excess of draw received for houses that are paid in full on effective date of termination whether voluntary or involuntary.

> Cell phone and computer will be made available to you along with any other approved office equipment you may need to complete your duties at HCH.
>
> The rest of the employee benefits will be in your new hire paperwork.
>
> Agenda for the first week of employment with HCH.
>
> *Introduction to office staff and management staff.
> *Fill out new hire paperwork with human resources.
>
> . . .
>
> We are thrilled to have you aboard! This is a great group of people and I'm sure you'll feel right at home.
>
> I'm sure you'll have lots of questions. I'll have the answers to most, some I won't. Together we'll get the right answers. Feel free to interrupt me anytime.

(Cox. Dep., Ex. 5.)

Before joining HandCrafted, Cox worked for a company called Nationwide Custom Homes for approximately fourteen years. In 2008, due to a downturn in the economy, Cox fell behind on sales. On July 14, 2008, the company issued Cox a Notice of Need for Improvement. (Cox Dep., Ex. 2.) Cox resigned on July 31, 2008, and began working for HandCrafted the following week, either on August 3rd or 4th. (Cox Dep. 27:17-25; Ex. 4.)

After he began working for HandCrafted, Cox signed two documents that contained references to the at-will nature of his employment. The first is a memo regarding the commission compensation policy. (Cox Dep., Ex. 6.) The memo explains how commissions are calculated in the event that employment is terminated, either voluntarily or involuntarily. The second is a document entitled "Sales Department Compensation Policy," which explains how commission payments are calculated. (Cox Dep., Ex. 7.) This document states, "HCH

sales representatives are paid $ _____ per year salary plus commissions." In addition, the policy states: "Any compensation or guarantee outside this policy is to be documented separately and agreed upon by the individual and Management." The policy also states: "North Carolina is an employment at-will state and as such, this document is not to be construed as a contractual guarantee of employment."

According to HandCrafted, there were concerns early on as to whether Cox should have been hired. Cox did not attend a function in Asheville that he was supposed to. Builders complained about Cox's lack of responsiveness. There were concerns about the state of Cox's personal life. Cox missed work because of personal problems. He admitted that his wife had a restraining order against him and that she had filed for divorce on the grounds of habitual drug use.

On December 4, 2008, just four months after being hired, Cox was notified that his employment would be terminated effective December 19, 2008. Cox met with Alan Trull, who told him that, given the lack of sales, HandCrafted could no longer afford to pay him. Cox allegedly told Trull that he could not fire him because Cox had an agreement to work twelve months. In addition, Cox told Trull that he had some projects in the works that he wanted to complete. Trull then asked Cox if he would be interested in continuing to work after December 19 on a commission-only basis, with no salary, and with continued use of the cell phone, computer, and other equipment. Cox said that he would, and did so. HandCrafted advanced Cox $500 for expenses during this time.

Although he continued to work on a commission-basis, Cox applied for

4

unemployment benefits soon after December 19, 2008. He told the South Carolina Employment Security Commission that he had been laid-off. HandCrafted reported the termination as a lay-off for lack of work, and not for poor performance.

Despite continued efforts, Cox was unable to sell a home, and indeed never sold a home during the entire time that he worked for HandCrafted. Although it is not clear when, HandCrafted eventually terminated all dealings with Cox and retrieved all equipment from his home.

## II. Legal Standard

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The party opposing summary judgment "must . . . set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2).

"The party seeking summary judgment carries the burden of showing that there is no genuine issue as to any material fact in the case." *Pulliam Inv. Co. v. Cameo Properties*, 810 F.2d 1282, 1286 (4th Cir. 1987). "When determining whether the movant has met its burden, the court must assess the documentary materials submitted by the parties in the light most favorable to the nonmoving party." *Id.*

## III. Law and Analysis

### A. Breach of Contract

HandCrafted argues that Cox was an at-will employee who did not have a contract for

a definite term. Even if Cox had a contract, HandCrafted argues, the contract is barred by the statute of frauds. HandCrafted also argues that the alleged contract has not been breached because Cox was fired for cause.

"South Carolina law has long recognized the doctrine of employment at-will." *Prescott v. Farmers Tel. Co-op., Inc.*, 516 S.E.2d 923, 925 (S.C. 1999). "At-will employment is generally terminable by either party at any time, for any reason or for no reason at all." *Id.* "The termination of an at-will employee normally does not give rise to a cause of action for breach of contract." *Id.*

"Of course, an employer and employee may choose to contractually alter the general rule of employment at-will and restrict their freedom to discharge without cause or resign with impunity." *Id.* "General contract law provides that a 'contract exists when there is an agreement between two or more persons upon sufficient consideration either to do or not to do a particular act.'" *Id.* at 925-26 (quoting *Carolina Amusement Co., Inc. v. Connecticut Life Ins. Co.*, 437 S.E.2d 122, 125 (S.C. Ct. App. 1993)). "In order to prove the existence of a definite contract of employment, the employee must establish all elements of the contract." *Id.* at 926. "Most employment agreements are unilateral." *Id.* "A unilateral contract has the following three elements: (1) a specific offer, (2) communication of the offer to the employee, and (3) performance of job duties in reliance on the offer." *Id.*

There are numerous cases in other jurisdictions that hold that an offer to pay someone a certain salary during the first year of employment does not guarantee employment during that year. *See, e.g., Giusti v. Sterling Wentworth Corp.*, 201 P.3d 966 (Utah 2009) (holding

6

that an offer letter in which the employer stated that it would pay the prospective employee a specified amount per month for the first twelve months of employment did not guarantee a minimum of twelve months' employment). Another line of cases hold that such an offer is a factor to be considered, along with other evidence, in determining whether a contract for a definite duration exists. *See, e.g., Paxson v. Cass County Road Comm'n*, 38 N.W.2d 315, 317 (Mich. 1949) ("Mere stating of the salary at an annual rate is not sufficient to support a hiring for a period of one year, but it is a factor that must be considered with other relevant facts.").

In the case at hand, Cox has failed to demonstrate that there is a genuine issue of material fact as to whether he had a contract for a definite term. According to Cox, HandCrafted "agree[d] to pay [him] $75,000 for 12 months plus the $500 car allowance." By its plain language, this offer does not relate to duration of employment. It does not mention duration of employment at all. There is no statement indicating that Cox's employment is guaranteed for any period of time. Instead, the offer relates to salary. It explains the level of compensation that Cox will receive during the first twelve months of employment, should his employment last that long. Likewise, the email that Cox subsequently received from Alan Trull does not guarantee employment for a one-year period. The email is about compensation, not duration of employment. The email states: "For the first twelve months of employment, HandCrafted Homes will compensate you at an annual rate of $75,000 a year." The remainder of the paragraph goes on to explain the breakdown between base pay and commission, and how commissions will be reconciled and paid.

7

Nowhere does the email guarantee employment for a specified term.

Other than the telephone call and the email, Cox has not presented any evidence indicating that there is a genuine issue for trial. There is no evidence that Cox discussed the duration of his employment with anyone at HandCrafted or that he had reason to believe that his employment was guaranteed.

Cox contends, nonetheless, that by quitting his former job, he gave HandCrafted independent consideration, taking his employment out of the at-will context. A similar argument has been rejected in *Orsini v. Trojan Steel Corp.*, 64 S.E.2d 878, 879 (S.C. 1951). In *Orsini*, the plaintiff was told he would be paid $75/week, commission on monthly sales, and an annual bonus. *Id.* He was also told, "You have a lifetime job here." *Id.* Given this offer, the plaintiff quit his job in Atlanta and moved his family to Columbia. His wife had quit her job too. Two weeks into the new job, the plaintiff was fired. The court held that the giving up the jobs in Atlanta and moving to Columbia were not sufficient independent consideration to render the contract enforceable as to duration. "The giving up of friends, church, social and school connections are such as every employee is faced when moving from one town to another or possibly from one part of a city to another and is not sufficient consideration to take the case out of the general [at-will] rule." *Id.* at 880. *See also Hudson v. Zenith Engraving Co., Inc.*, 259 S.E.2d 812, 813 (S.C. 1979) ("A contract of permanent employment or for a duration of years, which is not supported by any consideration other than the obligation of service to be performed on the one hand and wages on the other, is normally terminable at the will of either party.").

In sum, the court concludes that Cox did not have a contract for a definite period of time. His employment was at-will. Because there is no contract and the employment relationship was at-will, the court declines to address whether the alleged contract is barred by the statute of frauds, or whether Cox was fired for cause. Under the at-will doctrine, Cox could be fired for any reason, at any time.

### B. Promissory estoppel

HandCrafted contends that Cox cannot establish the necessary elements to maintain a claim under a theory of promissory estoppel. The court agrees.

"Promissory estoppel requires a claimant to prove: (1) the presence of an unambiguous promise; (2) the promisee reasonably relied upon the promise; (3) the reliance was expected and foreseeable by the promisor; and (4) the promisee was injured as a result of reliance upon the promise." *Davis v. Greenwood Sch. Dist. 50*, 620 S.E.2d 65, 67 (S.C. 2005).

Here, there is no evidence of an unambiguous promise to employ Cox for a twelve-month period. The communications between HandCrafted and Cox were about salary, not about duration of employment. Given the lack of an express agreement about duration of employment, it was unreasonable for Cox to rely upon the telephone conversation with Trull or the subsequent email as guaranteeing employment for a year. *See Food Lion, Inc. v. Capital Cities/ABC, Inc.*, 194 F.3d 505, 513 (4th Cir. 1999) (explaining that, absent an express agreement about duration of employment, it is unreasonable for the employer or employee to rely on any assumptions about the duration). Nor was it reasonable for Cox to

9

believe that his employment was guaranteed when Cox signed documents after he began working for HandCrafted that referenced the at-will nature of his employment.

There is no genuine issue of material fact for trial on the promissory-estoppel claim.

**C.      South Carolina Payment of Wages Act**

HandCrafted contends that the claim for violation of the South Carolina Payment of Wages Act is without merit. The court agrees.

The purpose of the South Carolina Payment of Wages Act is "to protect employees from the unjustified and wilful retention of wages by the employer." *Rice v. Multimedia, Inc.*, 456 S.E.2d 381, 383 (S.C. 1995). Under the Act, employers are required to notify employees at the time of hiring of the wages agreed upon and to give written notice seven days in advance if the wages are to be decreased. S.C. Code Ann. § 41-10-30(A) (Supp. 2009). An employer is also required to pay all wages due within forty-eight hours of the time of separation or by the next regular payday if that payday is within the next thirty days. S.C. Code Ann. § 41-10-50 (Supp. 2009).

There is no genuine issue of material fact in this case as to whether the Act has been violated. To begin, there is no evidence that HandCrafted has unjustifiably or wilfully retained Cox's wages. To the contrary, the evidence presented is that during the four months that Cox worked for HandCrafted as a salaried employee, Cox was paid a full salary, over half of which was based on commission, and yet he never made a sale. In addition, the seven-day notice requirement does not apply because Cox's wages were not reduced. Cox was terminated. He was notified on December 4, 2008, that his employment and wages

would terminate effective December 19, 2008. He applied for unemployment benefits shortly thereafter. The fact that he entered a subsequent agreement to work on a commission-only basis does not change the analysis. The commission-only arrangement was a new agreement and did not constitute a reduction in wages as contemplated under the Act.

For these reasons, the defendants are entitled to summary judgment on this claim.

### D.     After-acquired evidence

Finally, HandCrafted contends that Cox's claims should be barred due to his admitted cocaine use. Handcrafted argues that had it known about the drug use, it would have fired Cox on that basis alone.

Evidence acquired after an employee is terminated may be used as a defense to liability. *Lewis v. Fisher Serv. Co.*, 495 S.E.2d 440, 444 (S.C. 1998). The evidence must be such that had the employer known of it before the discharge, the employer would have fired the employee on those grounds alone anyway. *Id.* In addition, the wrongdoing must be established by clear and convincing evidence. *Id.*

The evidence presented in this case does not meet this standard. At the beginning of his employment at HandCrafted, Cox submitted to and passed a drug test. Although Cox admitted in his deposition that he had used cocaine in the past, there is no evidence that Cox used cocaine while he was employed by HandCrafted. As a result, the defendants have failed to set forth clear and convincing evidence that HandCrafted would have fired Cox on the basis of habitual drug use.

## IV. Conclusion

Because there is no genuine issue of material fact as to whether Cox had a one-year contract, or whether he was made a specific offer about duration, or whether the South Carolina Payment of Wages Act has been violated, the court grants the defendants' motion for summary judgment [Doc. 14].

IT IS SO ORDERED.

May 21, 2010  
Columbia, South Carolina

Joseph F. Anderson, Jr.  
United States District Judge